UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EDWARD B. KALIN, on behalf of himself
and other similarly situated stockholders of
Xanboo, Inc.

      Plaintiff,

  -against-

XANBOO, INC., RDI, INC., SHENZHEN RDI
ELECTRONICS & PLASTICS CO., LTD,
and BOB DIAMOND, BILL DIAMOND,
JIM DIAMOND and ED LANDAU, in their individual
and official capacities,

      Defendants.
------------------------------------------------------------X

CIVIL ACTION NO:

04-cv-5931
(CMK)

FEDERAL SECURITIES
COMPLAINT

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

  Plaintiff, EDWARD B. KALIN ("Plaintiff"), by and through his attorneys Garbar & Garbar, P.C., as and for his Complaint against the Defendants, alleges and shows to the Court as follows:

### NATURE OF ACTION

  1. This is an action for securities fraud brought on Plaintiff's behalf against Defendants, for the fraud committed and perpetrated by Defendants against Plaintiff with respect to the transacting of privately held securities, between the parties. As described with specificity and in detail below, each Defendant violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder.

  2. Defendants fraudulently and intentionally induced and caused Plaintiff to relinquish his stock of Xanboo, Inc. ("Xanboo"), in exchange for incentive stock options ("ISO's") in Xanboo by making fraudulent and misleading statements to Plaintiff that such potentially worthless ISO's would significantly benefit Plaintiff.

3.  As a result of Defendants' false and misleading statements, Plaintiff holds and possesses a substantial amount of potentially worthless stock options of Xanboo.

4.  Defendants knowingly and intentionally made false and misleading statements to Plaintiff that Plaintiff would significantly benefit if he accepted Defendants' proposal and offer that Plaintiff exchange his percentage of stock ownership of Xanboo for stock options of Xanboo.

## JURISDICTION AND VENUE

5.  The claims alleged herein arise under Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

6.  Jurisdiction is conferred on this Court by §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §§1331 and 1337.

7.  Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b)

8.  In connection with the acts, transactions and conduct alleged herein, Defendants used the means and instrumentalities of interstate commerce, including the United States mails and interstate telephone communications.

## PARTIES

9.  Upon information and belief, Plaintiff is an employee of Xanboo and Core Technology, Inc. ("Core")(the former name of Xanboo), and currently resides in the State of Connecticut.

10. Upon information and belief, Xanboo is a domestic, privately held corporation, and maintains its principal place of business in New York, New York.

11. Upon information and belief, RDI, Inc. ("RDI") is a domestic, privately held corporation, principally owned by Bob Diamond, Bill Diamond and Jim Diamond, and is located in Valhalla, New York.

12. Upon information and belief, Shenzhen RDI Electronics & Plastics Co., Ltd. ("RDI China") is a corporation, principally owned by Bob Diamond, Bill Diamond and Jim Diamond, and is located in China.

13. Upon information and belief, Bob Diamond, Bill Diamond and Jim Diamond are all principals of Xanboo, RDI and RDI China.

14. Upon information and belief, Ed Landau is a stockholder of Xanboo.

15. Defendants are liable, jointly and severally, as direct participants, as participants in a common scheme to defraud, and as co-conspirators of the wrongs complained of herein.

## SUBSTANTIVE ALLEGATIONS

16. From 1977 until 1999, Plaintiff was employed as an engineer with IBM Corporation. On or about August 2, 1999, Xanboo, formerly known as Core, induced Plaintiff to work as an engineer for Xanboo.

17. Plaintiff was and is considered to be a founder of Xanboo. In August 1999, as part of his compensation package for employment with Xanboo, Plaintiff accepted a lower than market salary, due to his receipt of one (1%) percent ownership of Xanboo, in addition to another percentage point of stock ownership, in the event of the sale of Xanboo or the public trading of Xanboo securities.

18. In or around September 1999, Plaintiff, and two other Xanboo employees, Babak Rezvani ("Rezvani") and Reza Jalili ("Jalili"), were called into a meeting with Bob Diamond and Ed Landau ("Landau"). At that meeting, Landau was introduced to Plaintiff, Rezvani and Jalili

as an attorney with a background in corporate and securities law who had good contacts within the investment banking community, as well as expertise in drafting and filing legal papers required for taking companies public.

19.     Bob Diamond and Landau informed Plaintiff, Rezvani and Jalili that the Xanboo stock originally issued to them (upon information and belief, Xanboo provided Plaintiff, Rezvani and Jalili with similar compensation packages) would result in costly and substantial complications and tax ramifications to Plaintiff, Rezvani and Jalili, and that they would receive greater and more significant benefit if they relinquished Xanboo stock that had been granted to them in exchange for stock options in Xanboo.

20.     As Plaintiff, Rezvani and Jalili were told to trust Bob Diamond and Landau, and that such three individuals would have a very wealthy future with Xanboo on account of such transactions, Plaintiff, and upon information Rezvani and Jalili, in reliance on all of the statements made by Bob Diamond and Landau, exchanged their securities ownership for incentive stock options ("ISO's").  At or around the time of the aforesaid transaction, Bob Diamond's sons, Bill Diamond and Jim Diamond, joined Xanboo as co-presidents, and received securities in the form of shares of stock.

21.     As part of the overall compensation package, Plaintiff, and upon information and belief, Rezvani, received revised employment contracts, which held that such respective individual could not be terminated from Xanboo other than for cause, in order to preserve the value of the options by preventing them from expiring and becoming worthless.  Moreover, Plaintiff, and upon information and belief, Rezvani, were told that the two year contract, which had been signed, would continue to be periodically re-executed and renewed as necessary in order to preserve the value of the options by preventing them from expiring and becoming

worthless.

22. Plaintiff had and has essentially no experience in the stock market or in dealing with privately-issued securities. Plaintiff, who is an engineer, is not a sophisticated investor, and Plaintiff reasonably relied, to his detriment, on Bob Diamond's and Landau's statements. Plaintiff was advised that Landau was an expert in corporate and securities laws, and that Bob Diamond, as chairman of CIDCO, led that company to issue a public stock offering. In and around February 2004, Plaintiff realized that his reliance on representations made by Bob Diamond and Landau was financially detrimental to Plaintiff.

23. In or about February 2004, Plaintiff realized, for the first time, that his employment contract with Xanboo would not be adequately renewed by Xanboo at the end of 2004; that Plaintiff would more likely than not be terminated shortly thereafter; and Plaintiff would no longer have a contract which protected him from being terminated at-will.

24. Upon information and belief, Rezvani was placed in the same predicament as Plaintiff.

25. The reason that Plaintiff realized the fraud by Xanboo, the Diamonds and Landau in February 2004, and not prior, was because Plaintiff had not been previously adversely affected by the fraudulent swap of ISO's for Plaintiff's previously owned stock. In addition, Defendants are continuing the fraud, and holding Plaintiff hostage in his ability to find gainful employment elsewhere in any of his fields of expertise, as Defendants are asserting claims on any and all intellectual property that may be created by Plaintiff. This goes well beyond the scope of any agreements between the parties, and any lawfully allowed restriction.

26. Now that Plaintiff's efforts at Xanboo have equated to Xanboo entering into multi-million dollar contracts with Shell Oil and Motorola, Inc., and the possibility of being

publicly traded or sold, Plaintiff has been placed in the untenable position of losing all of his ISO's 90 days following his termination.

27. Defendants knew and were aware at the time, when the fraudulent securities transaction was made, that Xanboo would not renew Plaintiff's contract when Xanboo was wealthy enough due to Plaintiff's efforts, and could place itself in a position to be publicly traded or sold. Defendants' statements were false and misleading at the time they were stated, were known to Defendants to be false and misleading, and were stated to cause Plaintiff's detrimental reliance on Defendants' fraudulent statements. Had Plaintiff continued to retain one (1%) percent of the company, with the potential of another percentage point in the event of Xanboo being publicly traded or sold, Xanboo could not merely remove Plaintiff from reaping huge amounts of capital, as the result of his hard work with Xanboo, and the hard work that Plaintiff performed in excess of twenty (20) years with IBM, which placed Plaintiff in the position to be extremely valuable to Xanboo, thus leading to the initial offer of stock as part of Plaintiff's compensation package.

## COUNT I

### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 OF THE SECURITIES AND EXCHANGE COMMISSION PROMULGATED THEREUNDER

28. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

29. During the relevant time periods, Defendants, singly and in concert, made untrue statements of material fact and omitted to disclose material facts to Plaintiff, that were intended to and did: (a) deceive Plaintiff; and (b) cause Plaintiff to relinquish his securities of Xanboo in exchange for potentially worthless ISO's.

30. Defendants made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading to Plaintiff, in light of the circumstances under which they were made, all in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

31. Defendants singly, and in concert, directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff, and made various deceptive and untrue statements of material facts and omitted to state material facts in order to make the statements made not misleading to Plaintiff, in light of the circumstances under which they were made. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce Plaintiff to relinquish his securities of Xanboo for potentially worthless ISO's

32. Defendants, pursuant to said scheme, plan, and unlawful course of conduct, knowingly and recklessly communicated to Plaintiff false and misleading statements regarding the significant benefit Plaintiff would receive if he relinquished his securities of Xanboo for potentially worthless ISO's.

33. As a result of Defendants' dissemination of the false and misleading statements set forth above, Plaintiff, in reliance on such statements, did relinquish his securities of Xanboo for potentially worthless ISO's.

34. In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices, schemes and artifices employed by Defendants to defraud Plaintiff, Plaintiff relied, to his detriment, on the integrity of his employer and employer's legal counsel and securities' advisor. Had Plaintiff known the truth, he would not

have relinquished his securities of Xanboo for potentially worthless ISO's.

35. Plaintiff has suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

36. By reason of the foregoing, Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff; and/or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff in connection with his relinquishment of his securities of Xanboo for potentially worthless ISO's.

## COUNT II

### VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT

37. Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if fully set forth herein.

38. The individually named Defendants, by virtue of their position, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the 1934 Act.

39. The individually named Defendants had the power and influence and exercised the same to cause Xanboo to engage in the illegal conduct and practices complained of herein.

40. By reason of the conduct alleged in Count I of the Complaint, the individually named Defendants are liable for the aforesaid wrongful conduct, and are liable to Plaintiff for the substantial damages which he suffered in connection with his relinquishment of securities of

Xanboo for potentially worthless ISO's.

## COUNT III

### SHAREHOLDER DERIVIATE ACTION

41. Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if fully set forth herein.

42. Plaintiff brings this Count against Defendants Bob Diamond, Bill Diamond and Jim Diamond ("The Diamond Defendants) on behalf of himself and all other stockholders of Defendant Xanboo, Inc. similarly situated and in the right of the said corporation.

43. At all times hereinafter mentioned, Plaintiff was and still is the owner and holder of record of shares of stock of Defendant Xanboo, Inc.

44. Plaintiff, and other similarly situated individuals are stockholders of Xanboo, Inc., but are not stockholders of RDI and RDI, China.

45. At all times hereinafter mentioned, upon information and belief, the Diamond Defendants were and still are among the directors, officers and shareholders of Defendants RDI and RDI, China.

46. At all times hereinafter mentioned, upon information and belief, The Diamond Defendants had a far greater stake in Defendants RDI and RDI, China, rather than Xanboo, Inc.

47. During or about the last twelve months, upon information and belief, the Diamond Defendants used their superior respective positions in Xanboo, Inc. to influence Xanboo, Inc. and its various officers to transfer, or attempt to transfer, many assets of Xanboo, Inc., including certain source code for its computer related intellectual property, its software and its mechanical designs, to RDI and RDI, China, at minimal or no cost.

48. Various employees of Xanboo have performed work, at the Diamond Defendants'

order and direction, that advances the business of RDI and RDI China, to the detriment of the shareholders of Xanboo.

49. Upon information and belief, Xanboo, Inc., RDI and RDI China share the same Chief Financial Officer ("CFO") and Chief Accounting Officer ("CAO"), John Horl.

50. Upon information and belief, Lantronix, Inc. ("Lantronix"), a current member of the Xanboo, Inc. Board of Directors, was investigated recently by the SEC for fraudently inflating the value of stock of Lantronix.

51. Upon information and belief, RDI and RDI, China have profited greatly from the transfer of assets as set forth above, and the stockholders of RDI and RDI, China have been benefited, while the stockholders of Xanboo, Inc. have been burdened.

52. Upon information and belief, RDI and RDI China have been given preferential treatment with respect to accounts payable of Xanboo, Inc., to the detriment of shareholders of Xanboo, Inc., as this has adversely affected relationships between Xanboo, Inc. and other numerous vendors.

53. The transactions between Xanboo, Inc., RDI and RDI, China have not been bona fide business transactions.

54. The business information provided at the web addresses of of Xanboo, Inc., RDI and RDI, China is substantially similar. Moreover, the other homepage address at the RDI China website is listed as www.Xanboo.com.

55. Upon information and belief, the Diamond Defendants have persuaded various customers and suppliers, that were initially transacting business with Xanboo, Inc., to instead transact business with RDI and RDI, China.

56. The Diamond Defendants have breached the stockholders agreement between the

stockholders of Xanboo, Inc.

57    The actions by the Diamond Defendants have been adverse to the interests of stockholders of Xanboo, Inc.

58    The continuing actions by the Diamond Defendants have been and continue to be detrimental to the stockholders of Xanboo, Inc.

59    On or about July 20, 2004, Plaintiff advised Xanboo, Inc. of his intention to bring a shareholder derivative action, with the understanding that Xanboo, Inc. would take action against The Diamond Defendants.

60.    Xanboo, Inc. failed and refused and still unreasonably fails and refuses to take action against the Diamond Defendants. On the contrary, Xanboo, Inc. has threatened litigation against Plaintiff, should Plaintiff commence litigation against Xanboo, Inc. and the Diamond Defendants.

61.    Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Awarding compensatory damages in favor of Plaintiff against all Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

B.    Awarding Plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for plaintiff's attorneys, and experts;

C.    Granting extraordinary equitable and/or injunctive relief as permitted by law, equity and federal and state statutory provisions sued on hereunder, including attaching,

impounding, imposing a constructive trust upon or otherwise restricting the proceeds of Defendants' activities or their other assets so as to assure that Plaintiff have an effective remedy; and

D.  Granting such other and further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: November 5, 2004
       New York, New York

                       **GARBAR & GARBAR, P.C.**

By:    Marc W. Garbar (MWG-9893)
        Attorneys for Plaintiff
        950 Third Avenue, 4th Floor
        New York, NY 10022
        (212) 688-8111