UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD KALIN,

                              Plaintiff,

        -v-

XANBOO, INC., *et al.*,

                              Defendants.

Case No. 04-CV-5931 (KMK)

OPINION AND ORDER

Appearances:

Marc W. Garbar, Esq.
Garbar & Garbar, P.C.
New York, New York
*Counsel for Plaintiff*

Jon A. Dorf, Esq.
Dorf, Karlen & Stolzar, LLP
New York, New York
*Co-Counsel for Defendant RDI, Inc.*

Laura Alcott Gaffney, Esq.
Dorf, Karlen & Stolzar, LLP
New York, New York
*Co-Counsel for Defendant RDI, Inc.*

Michael Patrick Collins, Esq.
Bond, Schoeneck & King, PLLC
New York, New York
*Counsel for Defendants Xanboo, Inc., Bob Diamond,
Bill Diamond, Jim Diamond, and Ed Landau*

KENNETH M. KARAS, District Judge:

        This case stems from two separate disputes between Plaintiff Kalin and his employers,

Defendants Xanboo, Inc. ("Xanboo"), RDI, Inc. ("RDI"), and Shenzhen RDI Electronics and

Plastics Co., Ltd. ("RDI China").  Plaintiff claims he was defrauded out of stock in Xanboo by

all of the Defendants.  Plaintiff also claims, on behalf of himself and those similarly situated, that Xanboo gave, or sold below market, valuable intellectual property to RDI and RDI China, thereby injuring Xanboo and its shareholders.  RDI has moved to dismiss all the claims brought against it.  For the reasons stated herein, RDI's Motion to Dismiss is granted in its entirety.

## I.  Background

### A.  Facts

#### 1.  The Parties

Except as otherwise noted, the following facts alleged in the Second Amended Complaint ("SAC") are presumed true for purposes of this motion.  Plaintiff is an employee of Xanboo, RDI, and RDI China (collectively, the "Corporate Defendants").[1]  (SAC ¶ 9.)  Plaintiff previously worked as an engineer for IBM Corporation until Xanboo, RDI, and RDI China "induced" Plaintiff to work as an engineer for them around August 2, 1999.  (*Id.* ¶ 29.)  As part of the compensation package for employment, Plaintiff accepted 1% stock ownership in Xanboo, another potential 1% stock ownership in Xanboo in the event of the sale or public trading of Xanboo, and a below-market-value salary.  (*Id.* ¶ 30.)  Plaintiff is a founder of Xanboo.  (*Id.*)

Defendants Xanboo and RDI are privately held corporations.  (*Id.* ¶¶ 10-12.)  Xanboo was formerly called "Core Technology, Inc."  (*Id.* ¶ 9.)  Defendant RDI China is a corporation principally owned by Bob Diamond, Bill Diamond, and Jim Diamond.  (*Id.* ¶ 12.)  The SAC does not describe the nature of the Corporate Defendants' businesses.  Defendants Bob

---

[1]For purposes of this Motion to Dismiss, the Court will consider Plaintiff to have been an employee of Xanboo, RDI, and RDI China.  *See In re Sharp Itern. Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (when considering a motion to dismiss, courts must "accept all of the plaintiffs' factual allegations as true and draw all reasonable inferences in favor of the plaintiffs" (internal quotations omitted)).  The Court notes, however, that Defendants deny that Plaintiff was ever employed by RDI or RDI China.  Moreover, in Plaintiff's initial Complaint, Plaintiff claimed to have been an employee of only Xanboo, not of RDI or RDI China.

Diamond, Bill Diamond, Jim Diamond (collectively the "Diamond Defendants"), and Ed Landau are all individuals associated with the Corporate Defendants.  The Diamond Defendants are principals of all three Corporate Defendants.  (*Id.* ¶ 13.)  Landau owns stock in Xanboo.  (*Id.* ¶ 14.)

Plaintiff claims that the Corporate Defendants are interrelated companies with the same owners and office location, and "possess[ing] substantial shares of stock ownership of each other."  (*Id.* ¶ 16.)  On the Xanboo and RDI websites, each company claims ownership of a factory in Shenzhen, China, with identical characteristics, and each displays the same photo of a factory.  (*Id.* ¶¶ 18-19.)  Xanboo and RDI have offices at the same address at 400 Columbus Avenue, Valhalla, New York.  (*Id.* ¶¶ 22-23.)  Xanboo and RDI both employ John Horl as their Chief Financial Officer and Chief Accounting Officer.  (*Id.* ¶ 25.)

### 2.  Fraud Claims

Plaintiff alleges that when he was hired by Xanboo, RDI, and RDI China on or about August 2, 1999, he received 1% ownership of Xanboo, and was promised another 1% ownership if Xanboo was later sold or went public.  (*Id.* ¶¶ 29-30.)

Plaintiff further alleges that, in or around September 1999, Plaintiff met with Defendants Bob Diamond and Ed Landau.  (*Id.* ¶ 31.)  During this meeting, Bob Diamond introduced Landau to Plaintiff as a lawyer knowledgeable and experienced in corporate and securities law. (*Id.*)  Bob Diamond and Landau told Plaintiff he would avoid expensive tax complications and receive "greater and more significant benefit" if he traded in his Xanboo stock in return for Xanboo incentive stock options ("ISOs").  (*Id.* ¶ 32.)  Two other Xanboo employees were also present at this meeting and received similar advice.  (*Id.* ¶¶ 31-32.)  Plaintiff now believes that this advice was fraudulently provided.  (*Id.* ¶ 32.)

3

In reliance on this advice, Plaintiff exchanged his stock for ISOs and signed a revised employment contract preventing Plaintiff's termination except for good cause.  (*Id.* ¶¶ 33, 35.) The other two employees at the meeting also exchanged their shares in Xanboo for ISOs.  (*Id.* ¶ 33.)  One of these other employees also signed the revised employment contract.  (*Id.* ¶ 35.) This revised contract was created in order to help preserve the value of Plaintiff's newly-received ISOs.  (*Id.* ¶ 35.)  The contract term was for two years, and Plaintiff was told the term would be periodically renewed.  (*Id.*)  The stock options were to expire 90 days after Plaintiff stopped working for Xanboo, when and if that occurred.  (*Id.* ¶ 40.)  In or about February 2004, Plaintiff first "realized" that his contract with Xanboo would not be renewed at the end of 2004, and that Plaintiff would probably be terminated soon after (*id.* ¶ 37), thereby triggering the expiration of his stock options.  (*Id.* ¶ 40.)

Plaintiff alleges that at the September 1999 meeting, Bob Diamond and Landau were acting on behalf of themselves, Bill Diamond, Jim Diamond, Xanboo, RDI, and RDI China.  (*Id.* ¶ 32.)  Plaintiff alleges that these individually named Defendants knew at the time of this meeting that Plaintiff would be terminated before Xanboo went public and that Plaintiff would never have an opportunity to exercise his ISOs.  (*Id.* ¶ 41.)

### 3.  Shareholder Derivative Claims

Plaintiff, on behalf of himself and those similarly situated, also claims that the Diamond Defendants, who are among the directors, officers, and shareholders of RDI and RDI China (*id.* ¶¶ 11, 13, 34), have a much greater stake in RDI and RDI China than in Xanboo.  (*Id.* ¶ 60.) During the period from on or about August 5, 2004, to on or about August 5, 2005, the Diamond Defendants, RDI and RDI China allegedly used their positions in Xanboo to cause Xanboo and its officers to transfer valuable assets from Xanboo to RDI and RDI China for little or no

compensation.  (*Id.* ¶ 61.)  These assets allegedly included mechanical designs, intellectual property, and source code for Xanboo's software.  (*Id.*)  Xanboo employees are also alleged to have done work to advance RDI's and RDI China's interests at Xanboo's expense, allegedly at the order and direction of the Diamond Defendants, RDI, and RDI China.[2]  (*Id.* ¶ 62.)  Finally, the Diamond Defendants, RDI, and RDI China allegedly persuaded investors, customers and suppliers of Xanboo to switch to RDI and RDI China, again at Xanboo's expense.  (*Id.* ¶ 67.)

All of this has allegedly benefitted RDI and RDI China at the expense of Xanboo and its stockholders.  (*Id.* ¶¶ 61, 62, 67.)  As a result, Plaintiff claims that the Diamond Defendants have breached their stockholders' agreement with Xanboo's stockholders.[3]  (*Id.* ¶ 68.)  Plaintiff also claims the Diamond Defendants, RDI, and RDI China have acted and continue to act adversely to the interests of Xanboo and its stockholders (*id.* ¶¶ 69-70) through the transfer of Xanboo's assets, (*id.* ¶ 61) the use of Xanboo's employees, (*id.* ¶ 62) and the pursuit of Xanboo's customers (*id.* ¶ 67) outlined above.

Plaintiff claims to continue to own stock in Xanboo.  (*Id.* ¶ 57.)  Plaintiff informed the Defendants on or about July 20, 2004, that he intended to bring a shareholder derivative action. (*Id.* ¶ 71.)  As of August 5, 2005, the date the SAC was filed, Xanboo had not brought action against the Diamond Defendants, RDI, or RDI China.  (*Id.* ¶ 72.)  Instead, "the Defendants" threatened to sue Plaintiff if he brought the action.[4]  (*Id.*)

---

[2]Plaintiff does not specify in the SAC what type of work was conducted by Xanboo employees on RDI's behalf.

[3]Plaintiff does not specify in what way the Diamond Defendants breached the stockholders' agreement.

[4]It is not clear in the SAC whether "the Defendants" refers to the Diamond Defendants, RDI, and RDI China, or whether it refers to all named Defendants.

B.  Procedural History

Plaintiff filed suit against the Defendants on July 30, 2004.  Plaintiff amended his initial

Complaint, filing the First Amended Complaint, on November 7, 2004, to include the derivative

action.  A single Answer to the First Amended Complaint was filed on behalf of all Defendants

except RDI China.  Following a status conference, the Court issued an order staying discovery

by Plaintiff against RDI, granting Plaintiff's request for leave to amend the Complaint a second

time, and giving RDI a date by which it must file a motion to dismiss or an answer.  RDI

subsequently filed the instant motion.

## II.  Discussion

A.  Standard of Review

### 1.  RDI's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

RDI filed its Motion pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff argues that the Court

should not consider RDI's Motion under Rule 12(b)(6), which relates to the allegations made in

Plaintiff's SAC, because RDI has already filed an answer to the First Amended Complaint.  As

discussed above, all Defendants except RDI China filed a joint answer to the First Amended

Complaint.  Plaintiff then sought permission to file the SAC.  The SAC added RDI as a

Defendant to both Counts II and III.  Plaintiff also added, to all counts, factual allegations

regarding the relationship between RDI and the other Parties, and added, to Count I, a reference

to Plaintiff's reliance on RDI's integrity in agreeing to cede his shares.

As an initial matter, it is clear that RDI may file a motion to dismiss with regard to

Counts II and III.  These counts were not directed against RDI at the time that RDI filed its

Answer to the First Amended Complaint.  That Answer therefore cannot be considered a

6

responsive pleading by RDI to Counts II and III.  The only remaining question, then, is whether RDI may file a motion to dismiss Count I under Fed. R. Civ. P. 12(b)(6).

The only case cited by either party that addresses this issue is *Mull v. Colt Co.*, 31 F.R.D. 154, 156 n.1 (S.D.N.Y. 1962).  There, the court granted one defendant's motion to dismiss the plaintiff's amended complaint.  The plaintiff then was allowed to file a second amended complaint.  *Id.* at 157-58.  The court held that because the moving defendants (including some against which the first complaint had not been dismissed) had not filed an answer to this second amended complaint, the defendants could not bring a motion on the pleadings pursuant to Fed. R. Civ. P. 12(c), which may only be brought once pleadings are closed, but were instead required to bring a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which may only be brought before pleadings are closed.  *See id.* at 156 n.1.  Although it is unclear in *Mull* whether any defendants had filed answers to the first amended complaint, *Mull* considered the second amended complaint distinct from the first amended complaint, such that responses to the previous complaint do not apply to the new complaint.  *See id.* ("Since the moving defendants have not served their answers to the amended complaint the Rule 12(c) motion is inappropriate.").

As applied to this case, *Mull* supports permitting RDI to file its Motion to Dismiss with regard to Count I, despite having previously answered the First Amended Complaint.  Because the SAC adds factual allegations to Count I which further support Plaintiff's claims against RDI, RDI must be permitted an opportunity to respond.  This is particularly so when the Plaintiff has generously been given two opportunities to correct his Complaint.

In any event, even if RDI's answer to the original complaint bars it from filing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court may consider the motion under Rule 12(c).  Indeed, the Second Circuit has held that converting a motion under these

circumstances "makes eminently good sense because a motion for judgment on the pleadings is the direct descendant of that ancient leper of the common law, the 'speaking demurrer.'" *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Moreover, the standard of review under both provisions is the same, and in considering either motion the court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.*

Accordingly, the Court will consider RDI's Motion with respect to all three counts of the SAC to determine if they state a claim.

### 2.  Consideration of Documents Extraneous to the Complaint

In Plaintiff's Memorandum of Law In Opposition to Motion to Dismiss ("Opposition Brief"), Plaintiff attempts to introduce several exhibits, as well as an affidavit sworn to by Plaintiff.  (Pl.'s Mem. 8.)  Of these new documents, only Plaintiff's affidavit was ever received by the Court or by RDI.  (*See* Def. RDI, Inc.'s Reply Mem. of Law in Further Supp. of Its Mot. to Dismiss 9 ("Def.'s Reply Mem.").)  Plaintiff's Opposition Brief also attempts to introduce new factual evidence.  (Pl.'s Mem. 3-6.)  None of this new information will be considered by the Court in addressing this Motion.

On a motion to dismiss, the court must assume that all factual allegations made in the complaint are true and draw all reasonable inferences in the plaintiff's favor.  *See Shah v. Meeker*, 435 F.3d 244, 248 (2d Cir. 2006); *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004). This analysis is limited to information contained within the four corners of the complaint, with "complaint" defined to include any exhibits, any other written statements or documents attached to the complaint or incorporated by reference, and any document that is relied upon to such an extent as to make it "integral" to the complaint.  *See Chambers v Time Warner, Inc.*, 282 F.3d

147, 152 (2d Cir. 2002).  When "material outside the pleadings is presented in response to a motion to dismiss, the court 'must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'"  *Vollinger v. Merrill Lynch & Co.*, 198 F. Supp. 2d 433, 437 (S.D.N.Y. 2002) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  Here, facts included by Plaintiff in the SAC, or facts directly referenced by the SAC or filed with the SAC will be considered.  Facts later included in Plaintiff's Opposition Brief will not be considered.  Facts introduced by Defendant RDI in its Motion to Dismiss also will not be considered.

There is therefore no need to convert this Rule 12(b)(6) motion into a motion for summary judgment.  Summary judgment normally is inappropriate before parties have had an opportunity for discovery.  *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *Disabled in Action of Metro. N. Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518, 2003 WL 1751785, at *14 (S.D.N.Y. Apr. 1, 2003) (refusing to convert motion to dismiss into motion for summary judgment where parties had not yet taken discovery).  When only one party seeks to convert a motion to dismiss into a motion for summary judgment prior to discovery by offering additional exhibits and affidavits other than those in the pleadings, a court may simply disregard any such submissions and decide the motion to dismiss on the merits of the pleadings alone.  *See Disabled in Action*, 2003 WL 1751785, at *14 (disregarding factual allegations submitted in affidavits but not included within the original amended complaint).  Here, where discovery was specifically stayed pending the motion to dismiss, and Defendant RDI has raised an issue – sufficiency of the pleadings – that does not require discovery, it is preferable to treat the Defendant's Motion as a motion to dismiss.

### 3.  Reviewing the Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all of the plaintiff's factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiffs.  Dismissal is proper if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief."  *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (quotations and citations omitted).  In addition to the facts set forth in the complaint, as noted, the Court may also consider documents attached to the complaint or incorporated by reference into the complaint, *see Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys.*, 155 F.3d 59, 67 (2d Cir. 1998), as well as matters of public record.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

### B.  Sufficiency of the Pleadings as to Count I:  Securities Fraud

The First Cause of Action alleges securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  Securities fraud claims brought under Section 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *See Rombach*, 355 F.3d at 170.  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  In the Second Circuit, to satisfy the requirements of Rule 9(b), a securities fraud complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170; *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364 (S.D.N.Y. 2006).

10

A complaint must also allege the proper level of scienter, which for a securities fraud action is "'an intent to deceive, manipulate or defraud.'"  *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the facts supporting scienter must be sufficiently alleged:  The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  "The Second Circuit has established that a strong inference of fraudulent intent 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Goplen v. 51job, Inc.*, Nos. 05 Civ. 0769, 05 Civ. 7527, 2006 WL 2801881, at *8 (S.D.N.Y. Sept. 28, 2006) (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)).

The heightened pleading requirement is intended to give the defendant "fair notice" of the facts upon which the plaintiff's claims rest, protect the defendant from reputational harm, and reduce the possibility that a groundless claim will take up time with extended discovery.  *Rombach*, 355 F.3d at 171; *see also Ross v. A. H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979); *Brew v. Philips, Appel & Walden, Inc.*, No. 80 Civ. 3703, 1981 WL 1598, at *1 (S.D.N.Y. Jan. 30, 1981).  However, "a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint 'gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based.'"  *Int'l Motor Sports Group, Inc. v. Gordon*, No. 98 Civ. 5611, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999) (citing *Spear, Leeds & Kellogg v. Public Serv. Co.,* 700 F. Supp. 791, 793 (S.D.N.Y. 1988)); *see also Lee v. Lending Tree*, No. 06 Civ. 0827, 2006 WL 2927241, at *7 (S.D.N.Y. Sept. 29, 2006).

11

When multiple defendants are named in an action for fraud or mistake, "[Rule 9(b)] requires that plaintiffs specifically state what each particular defendant did or said, by what means, when, to whom and with what intent." *Homburger v. Venture Minerals, Inc.*, No. 80 Civ. 7159, 1985 WL 549, at *2 (S.D.N.Y. Apr. 24, 1985) (citation omitted in original); *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Rahl v. Bande*, 328 B.R. 387, 414 (S.D.N.Y. July 22, 2005); *Adler v. Berg Harmon Assocs.*, 790 F. Supp. 1222, 1227 (S.D.N.Y. 1992). The plaintiff "may not rely on sweeping references to acts by all or some of the defendants." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995).

Here, RDI argues that "Plaintiff . . . does not state a single factual allegation for fraud . . . that conveys that RDI <u>alone</u> committed fraud against the Plaintiff, much less <u>when</u> such fraud occurred or <u>what specifically</u> was communicated by RDI." (Def's Mem. of Law in Supp. of It's (sic) Mot. to Dismiss 7-8 ("Def.'s Mem.").) Instead, according to RDI, the actions that Plaintiff alleges constitute fraud were taken by Bob Diamond and Ed Landau, not by RDI. (*See* Def.'s Mem. 3, 7-8; SAC ¶ 31-32.) Thus, to attribute Diamond and Landau's alleged fraud to RDI, Plaintiff must establish that: 1) the fraud allegations in the SAC with respect to Bob Diamond and Landau meet the heightened pleading requirement of Rule 9(b); and 2) the pleadings provide a sufficient factual basis from which to conclude that the actions of Diamond and Landau can be attributed to RDI.

Addressing each of these issues in turn, Rule 9(b) requires that Plaintiff's pleadings lay out the fraud with particularity, including "the who, what, when, where, and how [of the fraud]: the first paragraph of any newspaper story." *In re Initial Pub. Offering Secs. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.

12

1990).  Although the SAC does not provide direct quotations, it sufficiently specifies the content

of the fraudulent statements such that RDI can identify the statements alleged to be misleading:

Plaintiff was advised that exchanging his Xanboo stock for Xanboo ISOs would avoid certain

taxes and ultimately provide Plaintiff with greater benefit.  (SAC ¶ 32.)  This is adequate.  *See*

*Jubran v. Musikahn Corp.*, 673 F. Supp. 108, 112 (E.D.N.Y. 1987) (finding that stating contents

of defendant's statements, without "exact words," is sufficient if it gives defendant sufficient

notice of the charges so as to prepare a defense).  Second, Plaintiff clearly identifies the two

speakers as Bob Diamond and Ed Landau.  (SAC ¶¶ 31-32.)  Third, Plaintiff sufficiently

specifies when the statements were made.  Plaintiff identifies the date of the statements as "[i]n

or around September 1999."  (SAC ¶ 31.)  This satisfies the requirements of Rule 9(b).  *See*

*Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 378 n.104 (S.D.N.Y. 2004) (finding a

two-month period during which several meetings and conversations occurred sufficient); *Int'l*

*Motor Sports Group, Inc.*, No. 98 Civ 5611, 1999 WL 619633, at *4 (S.D.N.Y. Aug. 16, 1999)

(holding that a 60-day period during which a series of conversations occurred sufficient).  *But*

*see Cooper v. Parsky*, No. 95 Civ. 10543, 1997 WL 242534, at *18 (S.D.N.Y. Jan. 8, 1997)

(finding series of phone conversations over two months insufficient).  Fourth, while Plaintiff

does not specifically identify the location where the meeting took place, it can be inferred that

the meeting was held in the offices of one of the corporate Defendants (*see* SAC ¶ 31 (noting

Plaintiff was "called into a meeting")), and the circumstances are sufficiently well-defined to

identify the event for Bob Diamond and Ed Landau (being called into a meeting with two

specific other employees to discuss a specific matter).  *See Int'l Motor Sports Group, Inc.*, 1999

WL 619633, at *3 (finding "plaintiff need not plead . . . places with absolute precision" as long

13

as complaint still gives defendants reasonable notice of claim on which the complaint is based).

Indeed, even if the Court found the location of the statements to be insufficiently defined –

which it does not – Plaintiff could easily cure this defect through further amendment of the

Complaint.  Plaintiff also properly identifies the way in which the statements were fraudulent.

Plaintiff alleges that the Defendants, including both the speaker and the non-speaker Defendants,

knew at the time of the meeting that Plaintiff's job would be terminated before he could use the

ISOs that he was being advised to accept, and thus that exchanging Xanboo stock for ISOs

would not actually benefit Plaintiff.  (SAC ¶ 32, 41.)

Finally, Plaintiff pleads facts from which, drawing all inferences in his favor, scienter can

be strongly inferred.  As discussed above, such an inference is proper where a plaintiff has

alleged "facts to show that defendants had both the motive and opportunity to commit fraud."

*Goplen*, 2006 WL 2801881, at *8 (internal quotations omitted).  Here, both motive and

opportunity are sufficiently alleged.  It cannot be seriously contested that Defendants Bob

Diamond and Ed Landau had the opportunity to commit the fraud, since they personally spoke

the allegedly fraudulent statements.  Moreover, Plaintiff alleges that Bob Diamond's sons

received Xanboo stock at about the same time that Plaintiff was advised to relinquish his stock

(SAC ¶ 34), implying that the stock reclaimed from Plaintiff was given to Bob Diamond's sons

and thus establishing motive.  In addition, reclaiming Plaintiff's stock with the intention of firing

Plaintiff before he is able to use his new stock options would save money for a newly founded

firm. (*Id.* ¶ 30.)  Accordingly, the fraud allegations in the SAC meet the heightened pleading

requirements of Rule 9(b) with respect to Bob Diamond and Ed Landau.

Turning, then, to the question of whether Diamond and Landau's fraud, as pled, can be

attributed to RDI, the Court finds that it cannot.  Plaintiff offers two theories under which RDI

14

might be liable for the alleged fraud of Bob Diamond and Ed Landau.  According to Plaintiff, liability might properly be assessed if:  1) Bob Diamond and Ed Landau were speaking on behalf of RDI, in their capacity as agents of RDI (*see id.* ¶ 32); or 2) Bob Diamond and Ed Landau were speaking on behalf of Xanboo, and Xanboo is an "alter ego" of RDI.  (*See id.* ¶¶ 16, 26.)  Both of these theories fail.

First, if Bob Diamond and Landau were speaking on RDI's behalf during the September 1999 meeting, Plaintiff has failed to adequately allege that RDI had the necessary scienter.  As stated above, to adequately plead scienter, Plaintiff must provide facts creating a "strong inference," *Goplen*, 2006 WL 2801881, at *8, of "an intent to deceive, manipulate or defraud." *Ganino*, 228 F.3d at 168.  This can be done by alleging either facts showing "both motive and opportunity to commit the fraud," or facts "constitut[ing] strong circumstantial evidence of conscious misbehavior."  *Goplen*, 2006 WL 2801881, at *8.

Plaintiff fails to plead the first method, as no possible motive for RDI to commit this fraud is given; there is no indication that Xanboo's recovery of one individual's stock, in exchange for ISOs, could have benefitted RDI.  Plaintiff also fails to plead using the second method, since there is not "strong" evidence that RDI was the actor misbehaving, or that it was doing so consciously.  RDI's only connections to this meeting are the alleged facts that, when the meeting took place, Plaintiff was an employee of both Xanboo and RDI (*id.* ¶¶ 9, 29) and Bob Diamond was a principal of RDI.  (*Id.* ¶ 13.)  These claims alone do not establish an agency relationship between RDI and the two individual Defendants connected to the alleged fraud. Indeed, elsewhere in the SAC it appears that either only Xanboo has employed Plaintiff, or that the alleged fraud invokes only Xanboo's, not RDI's, employment of Plaintiff.  For example, the SAC alleges that Plaintiff was only given Xanboo stock "as part of his compensation package for

15

employment with *Xanboo*." (*Id.* ¶ 30 (emphasis added).)  When discussing the new employment contract that Plaintiff signed after exchanging his stocks for ISOs, Plaintiff only specifies that this contract prevents his termination from *Xanboo*.  (*Id.* ¶ 35.)  And when the SAC discusses Plaintiff's termination, it describes Plaintiff's "realiz[ation] . . . that his employment contract with *Xanboo* would not be adequately renewed." (*Id.* ¶ 37 (emphasis added).)  Thus, even assuming, as alleged in the SAC, that Plaintiff has been employed by both Xanboo and RDI, Plaintiff has not sufficiently alleged that Diamond and Landau represented RDI – and not solely Xanboo – when they held the September 1999 meeting.  On the contrary, Plaintiff's SAC specifically cites his dispute as concerning his Xanboo employment.

Moreover, Bob Diamond's role as a principal within RDI does not mean that, during the meeting with Plaintiff, Bob Diamond was "wearing his RDI hat."  On the contrary, as discussed above, the allegations in the SAC suggest that he was not.  A person can hold positions as a corporate officer, stockholder, and director of two companies, and yet can be acting in only one of those two roles at a given moment.  *See Umbaugh Builders, Inc. v. Parr Co. of Suffolk, Inc.*, 385 N.Y.S.2d 698, 700 (Sup. Ct. 1976) ("That Ronald and Alfred Parr are officers, directors and stockholders of both Parr and Suffolk Meadows does not alter the fact that the two corporations are separate entities . . . and a contract made by Suffolk Meadows does not bind Parr to pay the amount therein specified . . . .") (citations omitted)); *see also Port Chester Elec. Const. Co. v. Atlas*, 357 N.E.2d 983, 986 (N.Y. 1976) ("The fact that Sol Atlas was the controlling principal of these corporations is, by itself, insufficient to justify disregarding the corporate form."). Accordingly, given the allegations outlined above, Plaintiff has not adequately pled that RDI possessed the required scienter to commit the fraud alleged to have occurred at the September 1999 meeting.

16

The Court must next examine whether RDI is liable under Count I as an "alter ego" of Xanboo.  In his Opposition Brief, Plaintiff emphasizes that Xanboo and RDI are "truly 'separate' corporations."  (Pl.'s Mem. 8.)  RDI responds by arguing that Plaintiff did not base his Complaint on an alter ego theory, and he therefore cannot now advocate this theory.

"New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form."  *Prescient Acquisition Group, Inc. v. MJ Pub. Trust*, No. 05 Civ. 6298, 2006 WL 2136293, at *4 (S.D.N.Y. July 31, 2006); *see also William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989) (noting that New York courts are reluctant to pierce the corporate veil).  New York law allows the corporate veil to be pierced "where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'"  *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997)); *see also Zinaman v. USTS N.Y., Inc.*, 798 F. Supp. 128, 132 (S.D.N.Y. 1992).  "Veil-piercing is a fact specific inquiry and courts consider many factors."  *Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*, 427 F. Supp. 2d 463 (S.D.N.Y. 2006).  However, conclusory allegations of an alter ego are insufficient to survive a motion to dismiss.  *See Manos v Geissler*, 377 F. Supp. 2d 422, 425 (S.D.N.Y. 2005).

While never expressly arguing that Xanboo is merely RDI's alter ego, Plaintiff alleges that Xanboo and RDI "are . . . interrelated companies; share substantively the same owners; share the same office location; are mere departments of each other; and possess or continue to possess substantial shares of stock ownership of each other," (SAC ¶ 16), and that Xanboo and RDI are "interrelated and have close enough ties . . . to allow them to be considered the same

17

company for purposes of this litigation."  (*Id.* ¶ 26.)  However, these allegations alone are

insufficient to pierce the corporate veil.  Plaintiff does not plead facts showing that RDI

dominated Xanboo at all, let alone in the hiring or firing of Plaintiff Kalin.  Indeed, as noted

above, while Plaintiff generally asserts that he is an employee of both RDI and Xanboo, the

Complaint addresses only his employment by Xanboo.  Moreover, it is even less clear that RDI

used any alleged domination to fraudulently convince Plaintiff to exchange his stock for stock

options.  The main ties that Plaintiff alleges connect RDI to Xanboo are common claimed

ownership of a factory in China, a common office address in Valhalla, NY, and common

principals and owners.  (*Id.* ¶¶ 13, 18-19, 22-23.)  However, even if assumed to be true, these

facts are insufficient to pierce the corporate veil and consider Xanboo and RDI the same entity

for the purposes of a motion to dismiss.  *See In re Currency Conversion Fee Antitrust Litig.*, 265

F. Supp. 2d 385, 416 (S.D.N.Y. 2003) ("[P]urely conclusory allegations cannot suffice to state a

claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading

standard.").  Indeed, Plaintiff admits as much in his papers, stating that "Plaintiff does not

possess sufficient enough [sic] facts to establish a nexus between Xanboo, RDI and the other

named Defendants, and would require discovery in this case to establish such a nexus." (Pl.'s

Mem. 8.)

   Thus, the Court grants Defendant RDI's Motion to Dismiss Count I.

   C.  Sufficiency of Pleadings as to Count II: Control Person Liability

   In addition to the direct fraud claims against RDI, Plaintiff has asserted that Defendant

RDI is liable for Xanboo's alleged section 10(b) and Rule 10b-5 violations as a controlling

person under section 20(a) of the 1934 Act.  Section 20(a) provides:

18

> Every person who, directly or indirectly, controls any person liable under any
> provision of this chapter or of any rule or regulation thereunder shall also be
> liable jointly and severally with and to the same extent as such controlled person
> to any person to whom such controlled person is liable, unless the controlling
> person acted in good faith and did not directly or indirectly induce the act or acts
> constituting the violation or cause of action.

15 U.S.C. § 78t(a).  In the Second Circuit, "[i]n order to establish a *prima facie* case of liability under § 20(a), a plaintiff must show:  (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation."  *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quoting *SEC v. First Jersey, Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).  The Court considers each of these elements *seriatim*.

### 1.  Primary Violation

The first component of section 20(a) liability requires Plaintiff to establish a primary securities violation by a controlled person.  The control person claims under section 20(a) asserted against Defendant RDI are premised on a primary violation of section 10(b) by Xanboo or Bob Diamond.  Because, as discussed above, the Court has found those primary liability claims sufficient, the section 20(a) claims have the requisite primary violation foundation.

### 2.  Control of Primary Violator by Defendant

The second element requires control of the primary violator by the defendant.  Typically, a control person is a parent corporation, the employer of the primary violator, or a director or officer of the primary violator corporation.  *See* Edward Brodski & M. Patricia Adamski,  *Law of Corporate Officers and Directors:  Rights, Duties and Liabilities* § 16:3 (2006).  "Control over a primary violator may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the

ownership of voting securities, by contract, or otherwise." *First Jersey*, 101 F.3d at 1472-73

(internal quotations omitted).  Actual control over the alleged wrongdoer and the purported

transactions at issue is essential for control person liability.  *See Cromer Fin. Ltd. v. Berger*, 137

F. Supp. 2d 452, 484 (S.D.N.Y. 2001).  To survive dismissal, "[a] complaint must allege facts

from which it can be inferred that the defendant had actual power or influence over the

controlled person."  *Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569, 2002 WL 31867724, at *11

(S.D.N.Y. Dec. 20, 2002)*; see also Gabriel Capital, L.P. v. Natwest Fin., Inc.,* 122 F. Supp. 2d

407, 426-27 (S.D.N.Y. 2000) ("To survive a motion to dismiss, a plaintiff [must] plead facts

supporting a reasonable inference of control."); *Silva Run Worldwide Ltd. v. Gaming Lottery

Corp.,* No. 96 Civ. 3231, 1998 WL 167330, at *13 (S.D.N.Y. Apr. 8, 1998) ("In order to

establish controlling person liability . . . , a complaint must allege facts from which it can be

inferred that the defendant had actual power or influence over the controlled person . . . .").

　　RDI argues that Plaintiff has failed to plead facts sufficient to establish RDI's control

over the primary violators Xanboo and Diamond.  The SAC alleges that Xanboo and RDI "share

substantively the same owners," share an office location in Valhalla, and "possess or continue to

possess substantial shares of stock ownership of each other."  (SAC ¶ 16.)  Plaintiff also claims

that RDI "by virtue of [its] position, stock ownership and/or specific acts described above, w[as],

at the time of the wrongs alleged herein, [a] controlling person[] within the meaning of § 20(a)

of the 1934 Act." (*Id.*  ¶ 52.)

　　In cases involving parent-subsidiary relationships, courts have regularly based findings of

control person liability on allegations of substantial stock ownership and common principals.

*See, e.g., In re Indep. Energy Holdings, PLC Sec. Litig.*, 154 F. Supp. 2d 741, 770 (S.D.N.Y.

2001) (finding control based on ownership and common management); *Pollack v. Laidlaw*

*Holdings, Inc.*, No. 90 Civ. 5788, 1995 WL 261518, at *18 (S.D.N.Y. May 3, 1995) (finding control where defendant "controlled both [companies] through one hundred percent stock ownership and through common officers and directors"); *Borden, Inc. v. Spoors Behrins Campbell & Young, Inc.,* 735 F. Supp. 587, 591 (S.D.N.Y. 1990) (allegation that "defendants were [plaintiff's] sole shareholders" meets standard of alleged control by strongly suggesting defendants "had the potential power to influence and direct [plaintiff's] activities").  For example, Judge Kaplan recently found control even absent allegations of stock ownership, where "the top executives of [defendant] held the top two positions at [the primary violator corporation] and that at least one of those executives was involved in the [actions at issue]." *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278, 311 (S.D.N.Y. 2005).

Here, Plaintiff has sufficiently pled a mix of substantial stock ownership, shared officers and principals, and at least some direct involvement in Xanboo by officers of RDI.  Drawing all reasonable inferences in favor of the Plaintiff, the Court finds that Plaintiff has sufficiently pled that RDI is a "control person" over the primary violator Xanboo.  *See Cromer,* 137 F. Supp. 2d at 484 ("A plaintiff need only plead facts supporting a reasonable inference of control to survive a motion to dismiss." (quotations omitted)).

### 3.  Controlling Person as Culpable Participant

The third requirement, however, is where Plaintiff stumbles.  Plaintiff has failed to plead sufficiently that RDI was a culpable participant in the alleged fraudulent conversation of September 1999.  In *First Jersey*, the Second Circuit held that a prima facie case of liability under section 20(a) requires that a plaintiff show that "the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person."  101

F.3d at 1472 (citations and alternations omitted); s*ee also Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001) ("Controlling-person liability is a form of secondary liability, under which a plaintiff may allege a primary § 10(b) violation by a person controlled by the defendant and culpable participation by the defendant in the perpetration of the fraud." (citing *First Jersey*, 101 F.3d at 1472)); *In re Scholastic*, 252 F.3d 63, 77 (2d Cir. 2001) (same)); *Ganino*, 228 F.3d at 170 (adopting *First Jersey*'s requirement that a plaintiff must show "that the controlling person was in some meaningful sense a culpable participant in the fraud"); *Boguslavsky*, 159 F.3d at 720 ("In particular, we note that a determination of § 20(a) liability requires an individualized determination of a defendant's control of the primary violator as well as a defendant's particular culpability.").[8]

The Court is keenly aware of a split of opinion within the Second Circuit over whether section 20(a) requires an allegation of "culpable participation" as an element of a section 20(a) violation, or whether section 20(a) requires only that plaintiffs plead a primary violation and control, with defendants allowed to raise good faith as a defense. *Compare In re Alstom*, 406 F. Supp. 2d 402, 489 (S.D.N.Y. 2005) ("[T]he authority available [still] balances toward holding that the plaintiff bears the burden of pleading culpability as part of a prima facie case under § 20(a)."), *and In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 679 (S.D.N.Y. 1990) (requiring plaintiff to plead the alleged controlling defendants were "in some meaningful sense culpable participants in the fraud" such as where the "controlling persons encouraged and

---

[8]The Second Circuit first recognized the "culpable participation" component of section 20(a) liability in *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973), when it observed that the "intent of Congress in adding this section, passed at the same time as the amendment to Section 15 of the 1933 Act, was obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Id.* at 1299.

permitted the issuance of statements they knew were false") (citing *Lanza*, 479 F.2d at 1299),

*with In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 396 (S.D.N.Y. 2003) (finding scienter "not an

essential element of a Section 20(a) claim . . . [r]ather, a plaintiff need only prove scienter if a

defendant presents the affirmative defense that it acted in good faith").

        Having surveyed the relevant cases, the Court finds that the weight of Second Circuit

precedent favors the view that a Plaintiff plead "culpable participation" to state a section 20(a)

claim, and that such participation must be plead with particularity.  Thus, in order to withstand a

motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the

controlling person's conscious misbehavior or recklessness.  *See Lapin v. Goldman Sachs*

*Group, Inc.*, No. 04 Civ. 2236, 2006 WL 2850226, at \*19 (S.D.N.Y. Sept. 29, 2006); *In re*

*Alstom*, 406 F. Supp. 2d at 490 (noting that culpable participation requires "'something more

than'" mere negligence) (citing *Ernst & Ernst,* 425 U.S. at 209 n.28); *Steed Fin. LDC v. Nomura*

*Sec. Int'l, Inc.*, No. 00 Civ. 8058, 2001 WL 1111508, at \*10 (S.D.N.Y. Sept. 20, 2001) ("A

plaintiff may plead either conscious misbehavior or recklessness to satisfy the state of mind

portion of the culpable participation element."); *In re Livent*, 151 F. Supp. 2d 371, 417 (S.D.N.Y.

2001) (holding that "recklessness is the appropriate minimum standard of culpability that

plaintiffs must plead under § 20(a)").

        RDI argues that Plaintiff "has not alleged any particular facts concerning any conscious

misbehavior on the part of RDI."  (Def.'s Mem. 15.)  The Court agrees.  The only fact that

Plaintiff presents that might indicate RDI's involvement in the September 1999 fraudulent

conversation is that Bob Diamond is a principal at both RDI and Xanboo.  (SAC ¶ 13.)

However, this fact alone does not provide a sufficient factual basis to show that RDI consciously

or recklessly participated in the fraud to survive this Motion to Dismiss because, as noted above,

there is no allegation that Bob Diamond was acting on behalf of RDI when he dealt with Plaintiff regarding the shares.  Accordingly, the Court grants Defendant RDI's Motion to Dismiss with regards to Count II.

D.  Sufficiency of Pleadings as to Count III:  Shareholder Derivative Action

Plaintiff's third claim is a shareholder derivative action, which because it is brought in this district, is governed by New York law.[9]  Specifically, Plaintiff alleges, *inter alia*, that the Diamond Defendants, along with RDI and RDI China, influenced Xanboo to transfer certain assets, including certain intellectual property, to RDI and RDI China, all to the detriment of Xanboo.  (SAC ¶¶ 63-66.)  Under New York's Business Corporation Law, in a shareholder derivative action a plaintiff must assert that he is, and was at the time of the transaction about which he complains, a "holder of shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or certificates."  N.Y. B.C.L. § 626(a)-(b).  Here, Plaintiff asserts that "[a]t all times hereinafter mentioned, Plaintiff was and . . . is the owner and holder of record of shares of stock" in Xanboo – a fact the Court accepts as true for purposes of this motion.  (SAC ¶ 57.)

_____

[9]A federal court sitting in diversity jurisdiction, as here, applies the choice-of-law law of the forum state in which the court sits.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 554 (1949) (applying choice-of-law law of the forum state specifically in context of shareholder derivative actions).  Under New York law, courts look to the law of the state of incorporation to "adjudicat[e] a corporation's 'internal affairs,' including questions as to the relationship between the corporation's shareholders and its directors," such as a shareholder derivative action.  *Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980); *see also Locals 302 & 612 of the Int'l Union of Operating Eng'rs–Employers Constr. Indus. Retirement Trust v. Blanchard*, No. 04 Civ. 5954, 2005 WL 2063852, at *4 (S.D.N.Y. Aug. 25, 2005) (finding New York law applies state of incorporation law for N.Y. BCL § 626 case); *Burghart v. Landau*, 821 F.Supp. 173, 176 (S.D.N.Y. 1993).  Because Xanboo is a New York corporation, New York's substantive law applies.

24

1.  Plaintiff's Request for Individual Recovery

Defendant RDI argues that Plaintiff improperly seeks "compensatory and punitive damages" (*id.* ¶ 13) for the Shareholder Derivative Action, even though "a shareholder has no individual cause of action to recover for wrongs allegedly done to the corporation."  (Def.'s Mem. 16.)  RDI emphasizes that Plaintiff seeks no remedies or damages for any party other than himself.  (Def.'s Reply Mem. 9-10.)  RDI claims that this request for improper relief – monetary damages for Plaintiff rather than relief for Xanboo – should cause the derivative action to be dismissed.  (Def.'s Mem. 16.)  As RDI notes, "[i]t is axiomatic that a shareholder has no individual cause of action to recover damages for a wrong against a corporation, even if that shareholder loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation."  *Elenson v. Wax*, 626 N.Y.S.2d 531, 532 (App. Div. 1995) (citing *Abrams v. Donati*, 489 N.E.2d 751 (N.Y. 1985)).

Plaintiff claims that he does not seek monetary relief from RDI with respect to Count III.  (Pl.'s Mem. 12.)  Indeed, Plaintiff acknowledges that he "has no adequate remedy at law" for Count III.  (SAC ¶ 73; *see also* Pl.'s Mem. 12.)  Instead, Plaintiff requests that the Court award appropriate "extraordinary equitable and/or injunctive relief," as well as "such other and further relief as the Court may deem just and proper."  (SAC ¶¶ C-D.)

The Court agrees that Plaintiff is not requesting monetary damages for Count III when he requests monetary damages in general.  "Courts are granted considerable leeway in fashioning a remedy."  *Cohen v. Bloch*, No. 78 Civ. 3909, 1981 WL 1718, at *5 (S.D.N.Y. 1981) (citing, among others, *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, No. 96 Civ. 0512E, 1999 WL 1067569, at *1 (W.D.N.Y.) (finding court may award appropriate relief even if not plead).  Thus, although "[u]sually damages won in

25

a derivative suit do accrue to the corporation on whose behalf the action was brought . . . failure

to pray for the proper relief is not fatal to the validity of a complaint, since the court, if judgment

is entered, is capable of fashioning the correct relief." *General Elec. Co. v. Bucyrus-Erie Co*.,

563 F. Supp. 970, 974 (S.D.N.Y. 1983) (citations omitted); *see also PCB Piezotronics, Inc.*,

1999 WL 1067569, at *1.  Moreover, a plaintiff's "prayer for 'such other and further relief as

may be just and proper. . . . would be consistent with . . . ordering damages paid to [the

corporation on whose behalf the plaintiff sued] directly." *Bucyrus-Erie Co.*, 563 F. Supp. at 974.

Indeed, although the question need not be answered now, "there is ample precedent for

distributing damages won in a derivative suit directly to deserving shareholders." *Id*.

Accordingly, the Court here may assess relief for Xanboo in assessing "such other and further

relief" requested by Plaintiff (SAC ¶ D), and the Court may also interpret "extraordinary

equitable and/or injunctive relief as permitted by law" to allow relief for Xanboo.  (*Id.* ¶ C.)

Thus, the Court rejects RDI's request to dismiss Plaintiff's SAC on the ground that it improperly

requests personal monetary damages for the Shareholder Derivative Action.

### 2.  Prerequisites of a Shareholder Derivative Action

RDI lodges another objection to the Derivative Action, namely that Plaintiff has

failed to satisfy the requirement of prior notice to Xanboo's Board of Directors.[10]  The derivative

---

[10]There is a question as to whether RDI, as third party to the Kalin-Xanboo relationship, has standing to raise insufficient pleading of prior notice to Xanboo's Board of Directors.  Neither the parties nor this Court were able to locate any case discussing whether a third party defendant in a shareholder derivative action has standing to seek dismissal based on plaintiff's failure to plead adequate demand on the Board of Directors to institute its own action or the futility of such a demand under New York law.  However, New York law was originally based in part on Fed. R. Civ. P. 23.1 (previously Fed. R. Civ. P. 23(b)).  *See Marx v. Akers*, 666 N.E.2d 1034, 1037 n.13 (N.Y. 1996); *Barr v. Wackman*, 329 N.E.2d 180, 185 (N.Y. 1975).  Under the federal statute, "the weight of case law supports the standing of third parties to seek dismissal based on a plaintiff's failure" to sufficiently plead demand under Rule 23.1.  *Lou v. Balzberg*, 728 F. Supp.

action permits an individual shareholder to bring a lawsuit to vindicate a corporation's cause of

action against officers, directors and third parties that allegedly have harmed the corporation.

*See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991).  To prevent abuse of this kind of

action, however, courts have imposed a requirement that the shareholder establish that "the

corporation itself had refused to proceed after suitable demand, unless excused by extraordinary

conditions."  *Id.* at 95-96 (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)).  One exception

to this requirement is when it would have been futile for the shareholder to request the

corporation to have initiated the legal action.  *See Kamen*, 500 U.S. at 101-02.  This is the rule in

New York.  *See Ripley v. Int'l Rys. of Cent. Am.*, 188 N.Y.S.2d 62, 72-73 (App. Div. 1959).

           Fed. R. Civ. P. 23.1 requires that in a derivative action, the complaint "shall

allege . . . with particularity the efforts, if any, made by the plaintiff to obtain the action the

plaintiff desires from the directors or comparable authority."  However, because this demand

requirement allocates governing power between shareholders and directors, the adequacy of the

demand is governed by state law.  *See Kamen*, 500 U.S. at 92.  Here, as noted above, Xanboo is a

---

1010, 1019 (S.D.N.Y. 1990); *see also Shlensky v. Dorsey*, 574 F.2d 131, 142 (3d Cir. 1977)
("[I]t is well settled . . . that defendants other than the corporation whose rights the shareholder
plaintiffs are seeking to vindicate may successfully raise the defense of failure to comply with
Rule 23.1.").  New York's law here is also a codification of "an early rule of equity in
shareholder derivative actions" that was "sometimes stated as a strict pleading requirement."
*Barr*, 329 N.E.2d at 185.  As a strict pleading requirement, stating such demand on the Board, or
reasons such demand would be futile, is a necessary step in bringing any shareholder derivative
action against any party, including the third party defendant RDI here.

      Granting standing to third party defendants here also furthers the goals of requiring a
demand on the Board by reducing the infringement on the managerial discretion of such Boards
and discouraging "strike suits" brought for personal gain.  This interpretation also coincides with
New York courts' historical reluctance "to permit shareholder derivative suits, noting that the
power of courts to direct the management of a corporation's affairs should be 'exercised with
restraint.'"  *Marx*, 666 N.E.2d at 1037 (quoting *Gordon v. Elliman*, 119 N.E.2d 331, 335 (N.Y.
1954)).

New York corporation, so the adequacy of the demand and the corresponding duties of the directors are governed by general provisions of New York corporate law.  *See Stoner v. Walsh*, 772 F. Supp. 790, 796 (S.D.N.Y. 1991).  Under the New York Business Corporation Law, "[i]n any [shareholder derivative action] the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort."  N.Y.B.C.L. § 626(c).  "Demand to sue need not assume a particular form nor need it be made in any special language."  *Ripley*, 188 N.Y.S.2d at 72; *see also Stoner v. Walsh*, 772 F. Supp. at 796.  However, the demand "must inform the board 'with particularity' of the complained of acts and the potential defendants."  *Stoner*, 772 F. Supp. at 796 (quoting *Syracuse Television, Inc. v. Channel 9, Syracuse, Inc.,* 273 N.Y.S.2d 16, 25 (Sup. Ct. 1966)).  "A demand must fairly and adequately apprise the directors of the potential cause of action so that they, in the first instance, can discharge their duty of authorizing actions that 'in their *considered* opinion . . . [are] in the best interests of the corporation.'"  *Stoner*, 772 F. Supp. at 796 (citing *Barr v. Wackman,* 329 N.E.2d 180, 186 (N.Y. 1975)).  "The question of whether the demand requirement . . . has been met is a matter within the discretion of the court."  *Lewis v. Akers*, 644 N.Y.S.2d 279, 281 (App. Div. 1996) (omitting citations).

RDI argues that Plaintiff has failed to meet this requirement and has instead simply "nam[ed] the majority of directors as defendants and set[] forth conclusory allegations of wrongdoing."  (Def.'s Mem. 16.)  RDI characterizes this as Plaintiff's attempt to show that he is exempt from trying to initiate board action, and argues that this attempt is inadequate.  (Def.'s Mem. 16-17.)  Citing *Bildstein v. Atwater*, 635 N.Y.S.2d 88, 89 (App. Div. 1995), RDI argues that merely naming the majority of directors and setting forth conclusory allegations in the suit does not excuse making an appropriate demand on the board.

28

Plaintiff claims that he "clearly informed Defendants of the existence of a Shareholder Derivative Action, and placed the burden on the Defendants to bring such an action." (Pl.'s Mem. 13).  But the SAC states only that "Plaintiff advised Defendants of his intention to bring a shareholder derivative action, with the understanding that Xanboo would take action against the Diamond Defendants, RDI, and RDI China" and that Xanboo refused to take such action.  (SAC ¶¶ 71-72.)  Plaintiff gives no further detail as to what he told the Defendants about the potential action.

Such a sparse pleading fails to meet section 626(c)'s requirement that "the complaint . . . set forth *with particularity* the efforts of the plaintiff to secure the initiation of such action by the board."  N.Y.B.C.L. § 626(c).  This requirement "promotes policies of judicial economy because a demand may result in corrective action from the body that is usually in the best position to correct and investigate alleged abuses, and is 'also designed to discourage "strike suits" by shareholders making reckless charges for personal gain rather than corporate benefit.'"  *Stoner*, 772 F. Supp. at 796 (quoting *Barr*, 329 N.E.2d at 186.)  On this issue, this case is indistinguishable from *Stoner*.  The complaint in *Stoner* alleged that "on June 5, 1989 plaintiff's counsel sent a letter to [defendant's] Board . . . demanding that legal proceedings be commenced."  *Stoner*, 772 F. Supp. at 797.  The court held that such a "bare pleading" was insufficient to satisfy the requirement that "plaintiffs in derivative suits show, with 'particularity,' their exhaustion of internal corporate remedies with respect to each 'action the plaintiff desires from the directors.'"  *Id.*  Here, Plaintiff's unspecific claim in the SAC that he made a demand on the board fails for the same reason.  There is simply no allegation in the SAC detailing what wrongful action Plaintiff wanted Xanboo's board to rectify or why.  Thus, this Court finds that Plaintiff has not sufficiently pled "with particularity" that Plaintiff tried to

secure board-initiated action. Accordingly, the Court grants Defendant RDI's Motion to Dismiss Count III of the SAC.

## III. Conclusion

For the reasons stated herein, Defendant RDI's Motion to Dismiss is GRANTED on all three counts without prejudice. Plaintiff is given thirty days from the date of this Opinion to seek leave to file a third amended complaint.

SO ORDERED.

Dated:        January 12, 2007
              New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

30